## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| WARREN CHASE, #326-514 | * | |
| Plaintiff, | * | |
| v. | * | Civil No. CCB-14-3150 |
| U.S. DISTRICT COURT OF MARYLAND, *et al*. | * | |
| | * | |
| Defendants. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## RESPONSE TO ORDER TO SHOW CAUSE

The Office of the Attorney General, by Douglas F. Gansler, Attorney General of Maryland and Stephanie Lane-Weber, Assistant Attorney General, responds to this Court's Order to Show Cause and states as follows:

### INTRODUCTION

Plaintiff, Warren Chase, #326-514, an inmate housed at North Branch Correctional Institution ("NBCI"), filed a "Motion for Preliminary Injunction" with this Court requesting that he be placed in immediate protective custody.  Mr. Chase argues that Officers Bradley Wilt, Brandon Self, and Cody Gilpin placed him in a double cell with inmate Gary DuPont, #339-469, and persuaded DuPont to violently attack him. Due to this threat, Mr. Chase claims that he is in constant fear for his life and should be placed in protective custody. This Court has ordered that the Office of the Maryland Attorney General show cause why Plaintiff's request should not be granted.  Contrary to these allegations, however, Plaintiff

is not under risk of serious or imminent harm by being placed in a double cell at NBCI. Rather, there is no evidence that Mr. Chase's well-being is in danger through the intentional actions of NBCI staff. For the reasons presented below the Plaintiff's request for injunctive relief should be denied.

## FACTUAL BACKGROUND

On November 19, 2014, Lieutenant Bradley Wilt ordered that Officers Brandon Self and Cody Gilpin escort Mr. Chase from the "C" tier (single cell housing) to the "B" tier (double cell housing), because Inmate Chase had refused to allow the officers to conduct bar check (inspecting the security of the cell; a mandatory practice for the institution). Exhibit 1, Declaration of Christopher Burton, at ¶ 4. The double cell Chase was placed in was occupied by Inmate Gary DuPont, #339-469. *Id*. at ¶ 5. The move was done in hopes that Inmate Chase would not want to involve another inmate in his demonstration of refusal. *Id*. at ¶ 6. Later that same night, November 19, 2014, Inmate Warren Chase was escorted to the medical unit after an altercation with Inmate DuPont. *Id*. at ¶ 8. At the medical unit, Nurse James Hunt assessed Inmate Chase and determined that he had sustained a laceration above his left eye, superficial abrasions on his left temple and a large area of swelling on the left upper check near his eye. Exhibit 2, Medical Unit Record. Inmate Chase alleges that DuPont attacked him under the direction of Officers Wilt, Self, and Gilpin, however he did not want to file criminal charges against DuPont. *Id*. at ¶ 11. These Officers deny any wrongdoing regarding Inmate DuPont's attack on Inmate Chase. *Id*. at ¶ 13. Subsequently,

2

Inmate Chase was removed from the presence of Inmate DuPont and placed in a different double cell. *Id*. at ¶ 15. Inmate DuPont has also been placed on Inmate Chase's enemy list, ensuring they can never be placed in the same cell again. *Id.* at ¶ 16.

**ARGUMENT**

Absent extraordinary circumstances, a federal court should not issue an injunction against a State prison concerning prison management. The Supreme Court has repeatedly emphasized that prison administrators, and not the federal courts, must "manage penal institutions." The Court recognized that "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning and the commitment of resources, all of which are peculiarly within the province of the Legislative and Executive Branches of Government." *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 2259 (1987). An essential objective in the administration and management of a prison is "maintaining institutional security and preserving internal order and discipline." *Bell v. Wolfish,* 441 U.S. 520, 546, 99 S.Ct. 1861, 1878, 60, L.Ed.2d 447 (1979). Critical to that goal, prison officials must be given "wide ranging deference" in pursuing legitimate penological concerns. *Jones v. North Carolina Prisoners Labor Union*, 443 U.S. 119, 126, 97 S.Ct. 2532, 2538, 53 L.Ed.2d 629 (1977); *see also, Taylor v. Freeman,* 14 F.3d 266, 268 (4th Cir. 1993) (no federal injunction against State prisons "absent the most extraordinary circumstances" and federal courts should not immerse themselves in prison management).

"A preliminary injunction is an extraordinary remedy never awarded as a right" *Winter v. Natural Resources Defense Council, Inc*., 129 S.Ct. 365, 376 (2008). Because it is an extraordinary remedy, injunctive relief can only be awarded upon "a clear showing" that the plaintiff is entitled to such relief. *Winter*, 129 S.Ct. at 378-77. The Supreme Court has provided four requirements that a plaintiff must establish in order to obtain a preliminary injunction: (1) that he is likely to succeed on the merits at trial; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter,* 129 S.Ct. at 346-347 (2008); *see also, The Real Truth About Obama, Inc. v. Federal Election Com'n*, 575 F.3d 342, 345 (4th Cir. 2009), vacated on other grounds, 130 S.Ct. 2371, 176 (2010), reinstated in relevant part on remand, 607 F.3d 355 (4th Cir. 2010) (per curiam) (adopting the requirements of *Winter* and overruling *Blackwelder Furniture Co. v. Seilig Manufacturing Co.*, 550 F.2d 189 (4th Cir.1977)).

All four of the *Winter* requirements must be established independently. *See, The Real Truth About Obama, Inc.*, 545 F.3d at 346. The establishment of one or two of these factors does not "relax" the remaining requirements; there is no longer a "flexible interplay" among the four factors. *Id.* at 347. Thus, a plaintiff seeking a preliminary injunction must always "demonstrate that irreparable injury is *likely* in the absence of an injunction" even if he has established a likelihood of succeeding on the merits *Winter*, 129 S.Ct. at 375 (emphasis in original).

4

Both the Supreme Court and Fourth Circuit have emphasized that courts must consider the public interest impact of preliminary injunctions.  "'In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.'"  *Winter*, 129 S.Ct. at 376-77 (quoting *Weinberger v. Romero-Barcelo* , 456 U.S. 305, 312 (1982); *The Real Truth About Obama, Inc.*, 545 F.3d at 347.  Indeed, in *Winter*, the Supreme Court reversed the Ninth Circuit because it had "understated" the public interest burden that would occur if a preliminary injunction is granted. *Winter*, 129 S.Ct. at 377.

A classification decision or a transfer from one prison facility to another does not ordinarily implicate a protected liberty interest or state a claim under §1983. *Meachum v. Fano*, 427 U.S. 270 (1976);  *Paoli v. Lally*, 812 F.2d 1489, 1492-93 (4th Cir.), *cert. denied*, 484 U.S. 864 (1987). A prisoner has no liberty interest in being housed in any particular facility or on a particular status. *See, Olim v. Wakinekona*, 461 U.S. 238, 244-45 (1983). *Wetzel v. Edwards,* 635 F.2d 283 (4th Cir. 1980), is illustrative of the federal court's view of prison management, especially regarding the security classification of prisoners.  In *Wetzel*, the Fourth Circuit reversed the district court's grant of a preliminary injunction ordering the transfer of an inmate to a medium security prison against the State's decision that the inmate warranted housing in a maximum security facility. The Fourth Circuit stated:

> Thus, the prison administrators denied Wetzel's transfer based on their informed discretion as penal administrators.  The realities of running a penal institution are complex and unique to the prison environment.  Federal courts

5

have traditionally been reluctant to interfere in the problems of prison administration.  Indeed, the decisions made by prison administrators in their informed discretion have been accorded "wide-ranging deference" by the federal courts.  *Jones v. North Carolina Prisoners' Union, 433 U.S. 119, 126, 97, S. Ct. 2532, 2538, 53 L. Ed. 2d 629 (1977)*.  Moreover, as long as prison authorities are rationally pursuing a legitimate penological objective, the administrator has the "last word."  *Pitman v. Hutto, 594 F.2d 407, 412 (4th Cir. 1977)*.  Judicial recognition that courts are ill-equipped to deal with problems of prison administrators"... reflects no more than a healthy sense of realism."  *Procunier v. Martinez, 416 U.S. 396, 405, 94 S. Ct. 1800, 1807, 40 L. Ed. 2d 224 (1974)*.

*Wetzel* at 635 F.2d at 288.

Here, the Plaintiff has failed to demonstrate that physical injury or harm is likely in the absence of the injunction he is requesting.  Moreover, given Chase's transfer to a different cell and DuPont being placed on Chase's enemy list, there is no evidence that the Plaintiff is likely to be harmed by DuPont.

**CONCLUSION**

For the aforementioned reasons Plaintiff's request for injunctive relief should be denied.

Respectfully submitted,
DOUGLAS F. GANSLER
Attorney General of Maryland


_____/s/_____
STEPHANIE LANE-WEBER*
Assistant Attorney General
Federal Bar No. 00023

St. Paul Plaza – 19th Floor
200 St. Paul Place

6

Baltimore, Maryland 21202
(410) 576-6340 (Telephone)
(41) 576-6880 (Telefax)
E-mail: Slaneweber@oag.state.md.us

*Prepared with the assistance of Associate Albert Turner, Esq.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 22nd day of December, 2014, a copy of the

foregoing Response to Order to Show Cause was mailed, postage prepaid, to:

Warren Chase, # 326-514
North Branch Correctional Institution
14100 McMullen Highway, S.W.
Cumberland, MD 21502

_____/s/_____
STEPHANIE LANE-WEBER
Assistant Attorney General